UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 19-CR-0048-CVE |
| ) | (19-CV-0710-CVE-CDL) |
| ) | |
| FELICIANO VILLARRUEL-CABRE, ) | |
| ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

On December 23, 2019, defendant Feliciano Villarruel-Cabre, a federal prisoner appearing pro se, filed a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (Dkt. # 44). Section 2255 provides that "a prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or law of the United States . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence." Plaintiff moved to dismiss defendant's motion based on his waiver of the right to bring substantive challenges on collateral review. Dkt. # 53. On June 22, 2020, the Court granted plaintiff's motion to dismiss defendant's § 2255 motion as to the substantive challenges to defendant's conviction, but ordered plaintiff to respond to any ineffective assistance of counsel claims raised in defendant's § 2255 motion, and allowed defendant to reply. Dkt. # 54. Plaintiff has filed a response (Dkt. # 59), including an affidavit of defendant's attorney, Stephen J. Greubel. The deadline for defendant to file a reply in support of his § 2255 motion has expired, and defendant has not filed a reply.

I.

On April 2, 2019, a grand jury returned a superseding indictment[1] charging defendant with reentry of removed alien, in violation of 8 U.S.C. § 1326 (count one); aggravated identity theft, in violation of 18 U.S.C. § 1028A (count two); and failure to register as a sex offender, in violation of 18 U.S.C. § 2250 (count three). Dkt. # 21. Defendant was arraigned on the superseding indictment on April 10, 2019. Dkt. # 28. Defendant was found to be indigent, and the Court appointed an attorney to represent him. Dkt. # 8.

On May 8, 2019, with the assistance of an interpreter, defendant pleaded guilty to counts one and two pursuant to a Federal Rule of Criminal Procedure Rule 11(c)(1)(C) written plea agreement.[2] Dkt. # 36. It was stipulated by defendant, his counsel, and plaintiff that the appropriate disposition of defendant's case was a sentence of 46 to 57 months imprisonment as to count one, and 24 months imprisonment as to count two, to run mandatorily consecutive to count one. Id. at 14. In his signed petition to enter plea of guilty, defendant acknowledged that he had received a copy of the superseding indictment, had discussed it with his attorney, and fully understood every charge made against him. Dkt. # 35, at 1. He further acknowledged that count two would subject him to a mandatory minimum sentence of two years imprisonment, and that the sentence as to count two must run consecutively to any other term of imprisonment. Id. at 3. Finally, defendant acknowledged that the maximum sentence for count one was twenty years imprisonment. Id. In his plea agreement,

---

[1] The original indictment (Dkt. # 13) charged only one count. Counts two and three were added in the superseding indictment (Dkt. # 21).

[2] Count three was dismissed at sentencing. Dkt. # 41.

defendant signed an appellate and post-conviction waiver. Dkt. # 36, at 2-3. Defendant acknowledged:

> c.  [He] waives the right to collaterally attack the conviction and sentence pursuant to 28 U.S.C. § 2255, except for claims of ineffective assistance of counsel.
>
> [He] expressly acknowledges that counsel has explained his appellate and post-conviction rights; that the defendant understands his rights; and that the defendant knowingly and voluntarily waives those rights as set forth above.

Id. at 3-4. In the stipulations paragraph of his plea agreement, defendant acknowledged that

> Pursuant to Fed. R. Crim. P. 11(c)(1)(C), the appropriate disposition of this case is a sentence of 46 to 57 months imprisonment for Count One, 24 months imprisonment for Count Two to run consecutive to Count One, and three years of supervised release. This stipulated sentence departs from the anticipated guideline calculation for the violations to which the defendant is pleading guilty. The parties agree that this sentence is appropriate because it recognizes the seriousness of the offense and conserves government resources. This resolution avoids a trial involving the expenditure of resources and numerous government witnesses. Accordingly, this sentence serves the ends of justice.

Id. at 14. On the last page of his plea agreement, defendant signed a statement that

> I have read this agreement and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Further, I have consulted with my attorney and fully understand my rights with respect to sentencing which may apply to my case. No other promises or inducements have been made to me, other than those contained in this pleading. In addition, no one has threatened or forced me in any way to enter into this agreement. Finally, I am satisfied with the representation of my attorney in this matter.

Id. at 17.

At his change of plea hearing, defendant confirmed that the superseding indictment, plea agreement, and petition to enter plea of guilty had been read to him in Spanish, and that he had discussed the terms of the plea agreement with his counsel before signing it. Dkt. # 52, at 4, 9-10. The Court asked defendant whether he could think of any understanding that he has with the United

States in this case that is not in the plea agreement, and defendant answered, "No. Everything is good, everything is perfect." Id. at 11. He stated that he understood the terms of the plea agreement, and that no one offered him any other or different promises or assurances of any kind that are not in the plea agreement. Id. He admitted that he was pleading guilty of his own free will because he is guilty. Id. Defendant acknowledged that he understood that if, at sentencing, the Court chose not to follow the terms of the plea agreement, it would give defendant the opportunity to withdraw his plea of guilty. Id. at 12. Defendant acknowledged that the sentence the Court may impose may include terms of imprisonment as to count one of not more than twenty years, and as to count two not less than two years consecutive to any other term of imprisonment. Id. at 13. Defendant verified that he had discussed the sentencing guidelines with his counsel and how they might affect his case. Id. at 19. Defendant acknowledged that, by entering the plea agreement and a plea of guilty, he was waiving or giving up certain appellate and post-conviction rights, including knowingly and voluntarily agreeing to waive the right to directly appeal his conviction and sentence pursuant to 28 U.S.C. § 1291 and/or 18 U.S.C. § 3742(a), except that he reserves the right to appeal from a sentence that exceeds the statutory maximum. Id. at 19-20. He also stated that he understood that he was knowingly and voluntarily agreeing to waive his right to collaterally attack his conviction and sentence pursuant to 28 U.S.C. § 2255, except for claims of ineffective assistance of counsel. Id. at 20. He acknowledged that his counsel had explained his appellate and post-conviction rights, that he understood those rights, and that he knowingly and voluntarily waived those rights. Id. at 20-21. The Court verified that defendant understood his Sixth Amendment rights to a jury trial, and that he wished to waive those rights knowingly and voluntarily. Id. at 23-25. The Court asked defendant if he and his counsel had discussed the role of aggravating facts or sentencing factors that could

enhance his sentence. Id. at 23. Defendant confirmed that he had, and that he understood "that an aggravating fact or sentencing factor includes all relevant conduct associated with [his] criminal conduct that can increase [his] sentence." Id. The Court confirmed that defendant understood that, by waiving his rights to a jury, he was waiving his right to have any aggravating fact or sentencing factor submitted to a jury and proven beyond a reasonable doubt. Id. Defendant agreed, and indicated that he understood that, instead, the Court would determine whether any alleged sentencing factors that could increase his sentence had been proven. Id. at 24. After this colloquy, defendant signed a waiver of jury, indicating that he desired "to voluntarily give up [his] right to a jury in all respects, both as to the determination of guilt or innocence and as to sentencing." Id. at 24-25.

The Court reviewed with defendant each element of each offense to which defendant was pleading guilty, and defendant admitted the factual basis underlying those two offenses. Id. at 27-30. The Court next reviewed the stipulations in paragraph 22 of the plea agreement. Id. at 30. Defendant acknowledged that he "understand[s] that [he] and [his] attorney and the United States are stipulating and agreeing that pursuant to Federal Rule of Criminal Procedure Rule 11(c)(1)(C) the appropriate disposition in this case is a sentence of 46 to 57 months' imprisonment for Count One, and 24 months' imprisonment for Count Two to run consecutively to Count One." Id. at 31. Defendant acknowledged that the "stipulated sentence departs from the anticipated guideline range for the violations to which [he was] pleading guilty." Id. And he said that he understood that he was "agreeing that this sentence is appropriate because it recognizes the seriousness of the offenses and conserves government resources." Id.

Following the change of plea hearing, the United States Probation Office prepared a presentence report (PSR). The probation office determined that defendant's prior conviction

constituted an aggravated felony, which subjected defendant to a statutory maximum sentence of twenty years. PSR, at 1. The probation office calculated the advisory guideline imprisonment range to be 37 to 46 months as to count one, and 24 months as to count two, to run consecutively to count one. PSR, at 14. At the sentencing hearing on July 24, 2019, defendant confirmed that the PSR had been read to him in Spanish and that had the opportunity to review it with Greubel with an interpreter present.³ The defense did not have any corrections, objections, or changes to the report and the Court accepted its findings of fact.

The Court sentenced defendant to 46 months as to count one and 24 months as to count two, to run consecutively, for a total sentence of 70 months. Dkt. # 41. Judgment was entered on July 24, 2019 (Dkt. # 42), and defendant did not appeal the conviction or sentence.

Defendant moves to vacate his sentence under 28 U.S.C. § 2255, with an attached unsworn "affidavit," which reiterates defendant's challenges to his sentence. Dkt. ## 44, 45. His two grounds for relief in his motion are stated by him as:

- Ground One: "I contest the criteria the District Cour[t] used to impose[] a[n] UPWARD-VARIANCE based [o]n my criminal recor[d] 8 U.S.C. § 1326[b](2) because . . . the indictment did not all[e]ge it"; and

- Ground Two: "I contest the imposition of the [o]ffense 18 U.S.C. [§] 1028(A)(1) Aggravated Identity Theft, but I commit the Offense Code []160 18 [U.S.C. §] 1028A(A)(1) FRAUD IDENTITY THEFT."⁴

Dkt. # 44, at 4-5. In the supporting facts and direct appeal sections of Ground One, defendant makes reference to his counsel's inability to give him reasonable answers as to why he faced a sentencing

---

³ The Court has reviewed the audio recording of the sentencing hearing to confirm that defendant testified as stated.

⁴ In other parts of defendant's motion, he appears to suggest that he should have been charged with 18 U.S.C. § 1028 rather than 18 U.S.C. § 1028A. See Dkt. # 44, at 1, 5.

enhancement on that charge and why could not appeal based on these challenges. Id. at 4. In the direct appeal section of Ground Two, defendant states that his lawyer advised him that the appeal would not help him, and his lawyer allegedly did not take the time to explain to him the difference between aggravated and regular identity theft. Id. at 6. In addition, at the end of his motion, defendant asks the Court to accept his claim "based on the ineffectiv[e] and wrong advi[c]e of [his] lawyer . . . ." Id. at 12. In his unsworn "affadavit," defendant also complains that his lawyer never discussed soliciting letters from defendant's friends and family to submit to the Court prior to sentencing. Dkt. # 45, at 1. The Court dismissed defendant's substantive claims, as they were barred by the valid waiver in his plea agreement. Dkt. # 54. To the extent defendant makes arguments about ineffective assistance and wrong advice of counsel, the parties have had the opportunity to fully brief those issues, and the Court now addresses those claims.

II.

Defendant complains about his lawyer in the facts supporting his § 2255 motion (Dkt. # 44), which the Court construes as ineffective assistance of counsel claims. Defendant argues that: 1) his counsel could not "give [defendant] a reasonable answer" as to why he faced a sentencing enhancement on his reentry charge as a result of his prior criminal activity; 2) his lawyer did not explain the difference between aggravated and regular identify theft; and 3) he did not appeal because his "lawyer told [him] the appeal [would not] help" and "suggested" that defendant "leave this conviction like it is now . . . ." Id. at 4. In addition, defendant's unsworn "affidavit" also states that: 4) his attorney never advised him of the option to solicit letters to the Court from his family prior to his sentencing. Dkt. # 45, at 1, 2.

Plaintiff responded to defendant's ineffective assistance of counsel claims, which included an affidavit of Greubel. Dkt. ## 59, 59-1. Plaintiff argues that Greubel effectively represented defendant and, even if any of the grounds alleged amount to deficiencies, defendant was not prejudiced as a result. Dkt. # 59.

To establish ineffective assistance of counsel, a defendant must show that his counsel's performance was deficient and that the deficient performance was prejudicial. Strickland v. Washington, 466 U.S. 668, 687 (1984); Osborn v. Shillinger, 997 F.2d 1324, 1328 (10th Cir. 1993). A defendant can establish the first prong by showing that counsel performed below the level expected from a reasonably competent attorney in criminal cases. Strickland, 466 U.S. at 687-88. There is a "strong presumption that counsel's conduct falls within the range of reasonable professional assistance." Id. at 688. In making this determination, a court must "judge . . . [a] counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id. at 690. Moreover, review of counsel's performance must be highly deferential. "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id. at 689.

To establish the second prong, a defendant must show that counsel's deficient performance prejudiced the defendant to the extent that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694; see also Lockhart v. Fretwell, 506 U.S. 364, 369-70 (1993). In Glover v. United States, 531 U.S. 198, 199 (2001), the Supreme Court held that "any amount of actual jail time has Sixth Amendment significance." Thus, the prejudice prong of the Strickland test does not require that any increase in

sentence must meet a standard of significance. See United States v. Horey, 333 F.3d 1185, 1187-88 (10th Cir. 2003).

The Court finds that defendant's allegations fail to meet either prong of the Strickland test for ineffective assistance of counsel. Under the performance prong, there is also no indication that Greubel acted improperly or unreasonably in advising defendant and negotiating the plea agreement, which benefitted defendant by agreed dismissal of count three for failure to register as a sex offender and agreement to a sentence as to count one well below the statutory maximum and within the advisory guideline range. It is also clear that there is no reasonable probability that, but for Greubel's alleged deficiencies, the results of defendant's proceedings would have been any different.

To the extent that defendant argues that Greubel was ineffective for advising him that an "appeal [would not] help" and "suggested" that defendant "leave the conviction like it is now . . . ," Dkt. # 44, at 4, any such advice was reasonable. Defendant waived his right to bring substantive challenges to his conviction and sentence as a condition of his Rule 11(c)(1)(C) plea agreement, Dkt # 36, at 3-4, and confirmed his understanding of this waiver in open court during his plea hearing. Dkt. # 52, at 19-21. In his affidavit, Greubel confirms that he advised defendant of the "benefits and risks of appealing his conviction and sentence" and explained "that an appeal was unlikely to result in a more favorable result because the [Court] had sentenced him to the minimum sentence possible" under the terms of his Rule 11(c)(1)(C) plea agreement. Dkt. # 59-1, at 2. Greubel also states that he "advised [defendant] that the decision to appeal or not to appeal was his to make" and that defendant "did not wish to appeal." Id. Defendant voluntarily waived his right to appeal as a condition of his plea agreement. Dkt. # 36, at 3-4. Therefore, Greubel's advice to defendant about

the likelihood of success of an appeal was not ineffective assistance of counsel because it was reasonably based on the binding plea agreement.

Next, Greubel was not ineffective in explaining the relevant statutory sentences applicable to defendant's reentry charge, nor was he ineffective in explaining the difference between aggravated and regular identity theft. Greubel states that he "met with [defendant] in person on at least eight occassions" and "reviewed with [defendant] the essential elements of [each] offense and the evidence in support of each essential element." Dkt. # 59-1, at 1, 2. As to the effect of defendant's prior conviction on the statutory maximum sentence for his reentry charge, Greubel explained to defendant that "while [he] believed [a prior felony conviction] would qualify as an aggravated felony, the Court would make the final determination prior to sentencing." Id. at 2. Greubel also states that defendant "agreed that he was guilty of [both] offense[s] and did not wish to contest [them]." Id. at 1, 2.

Further, defendant offers no details to support his assertion that Greubel misadvised him, and, in fact, the record reflects otherwise. Defendant represented both in the plea agreement and in the change of plea hearing that he was satisfied with defense counsel's representation. In the plea agreement, he signed a statement that he was "satisfied with the representation of [his] attorney in this matter." Id. at 17. Before defendant's statements in the change of plea hearing, he was sworn and stated that he understood he was under oath and could be prosecuted for perjury for making false statements. Dkt. # 52, at 8, 12. Then he confirmed that he fully discussed his charges and the case in general with Greubel, and that he was fully satisfied with Greubel, including Greubel's representation, and the advice Greubel had given to him. Id. at 10. Defendant also affirmed that he and Greubel had fully discussed the plea agreement and that he understood the charges against him.

Id. at 11, 12. In addition, the Court asked defendant if he and Greubel had discussed the role of aggravating facts or sentencing factors that can enhance his sentence and defendant confirmed that they had, and that he understood that an aggravating fact or sentencing factor includes all relevant conduct associated with his criminal conduct that could increase his sentence. Id. at 23. The Court then reviewed each element the government would need to prove at trial to prove defendant guilty of both counts; defendant confirmed that he understood them all, and admitted in open court to the factual basis underlying the offenses. Dkt. # 52, at 27-30, 32-35.

After defendant pleaded guilty to both counts, the Court found, "based upon defendant's admissions, demeanor, and responsive answers" to the Court's questions, that the defendant was "fully competent and capable of entering the informed pleas," and that he was "aware of the nature of the charges and the consequences of the pleas, and that the pleas of guilty [were] knowing and voluntary pleas supported by independent bases in fact containing each of the essential elements of each offense." Id. at 35. Therefore, the Count finds that defendant understood the charges to which he pleaded guilty, including the elements of the offenses, the statutory maximum sentences that he faced, and the stipulations regarding his sentence to which he voluntarily agreed. As such, any allegations that Greubel misadvised or did not adequately explain the reasons for his sentence and the differences between aggravated and standard fraud are unfounded and defendant cannot establish that Greubel performed deficiently.

Even if defendant could demonstrate that Greubel's performance was deficient such that he performed below the level expected from a reasonably competent attorney in criminal cases, defendant suffered no prejudice as a result. If a defendant has pleaded guilty, as is the case here, prejudice arises only if, but for counsel's errors, the defendant would not have pleaded guilty and

11

would instead have gone to trial. Miller v. Champion, 262 F.3d 1066, 1072 (10th Cir. 2001). An insistence that defendant would have gone to trial but for counsel's errors is "necessary" to entitle a defendant to relief. Id. At no point in his pleadings does defendant assert that he would have gone to trial, see Dkt. ## 44, 45, and there is no reason to think defendant would not have pleaded guilty to the favorable terms of the plea agreement, which required dismissal of count three for failure to register as a sex offender and a sentence well below the statutory maximum and within the advisory guideline range, and gone to trial instead.

Even if defendant had claimed he would have withdrawn his plea and gone to trial, he still was not prejudiced by any of counsel's alleged deficiencies. Defendant was sentenced under a binding Rule 11(c)(1)(C) plea agreement. Under Rule 11(c)(1)(C), the government and defendant may enter into a plea agreement in which they "agree that a specific sentence or sentencing range is the appropriate disposition of the case," and "such a recommendation or request binds the court once the court accepts the plea agreement." Id. Defendant's plea agreement stated:

> Pursuant to Fed. R. Crim. P. 11(c)(1)(C), the appropriate disposition of this case is a sentence of 46 to 57 months imprisonment for Count One, 24 months imprisonment for Count Two to run consecutive to Count One, and three years of supervised release. This stipulated sentence departs from the anticipated guideline calculation for the violations to which the defendant is pleading guilty.[5] The parties agree that this sentence is appropriate because it recognizes the seriousness of the offense and conserves government resources. This resolution avoids a trial involving the expenditure of resources and numerous government witnesses. Accordingly, this sentence serves the ends of justice.

Dkt. # 36, at 14. The PSR prepared by the probation office calculated the advisory guideline imprisonment range to be 37 to 46 months as to count one, and 24 months as to count two, to run

---

[5] In the end, there was no sentencing departure because the stipulated sentence of 46 months as to count one was within the advisory guideline range calculated in the PSR.

consecutively to count one. PSR at 14. The Court sentenced defendant to 46 months as to count one and 24 months as to count two, to run consecutively, for a total sentence of 70 months. Dkt. # 41. This sentence was within the binding sentencing range as to count one that defendant stipulated to in the Rule 11(c)(1)(C) plea agreement; it was also within the advisory guideline range calculated by the probation office, and well below the statutory maximum. Dkt. # 36, at 12.

Defendant voluntarily agreed to a binding sentencing range in his plea agreement under Rule 11(c)(1)(C). He admitted to the facts underlying the offenses in open court, and was subsequently sentenced to the minimum sentence possible pursuant to his Rule 11(c)(1)(C) agreement. Therefore, defendant suffered no prejudice as a result of any alleged deficiencies of counsel because he was sentenced in accordance with statute and his binding plea agreement, as well as the advisory guideline range.

Finally, defendant suffered no prejudice from Greubel's alleged failure to solicit letters in support of defendant prior to his sentencing for the same reason. Once the Court accepted the Rule 11(c)(1)(C) plea agreement, the Court was bound to sentence defendant in accordance with the stipulated sentence. Here, the Court sentenced defendant to the minimum term agreed to by the parties. Even if the Court had received letters in support of defendant, the Court could not have sentenced defendant to lower terms of imprisonment. Therefore, defendant was not prejudiced as a result of not having letters submitted on his behalf.

In sum, the Court finds that defendant's remaining claims of ineffective assistance of counsel in his motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255 (Dkt. # 44) should be denied.

### III.

Pursuant to 28 U.S.C. § 2253, a defendant is required to obtain a certificate of appealability (COA) before appealing a final order in a proceeding under 28 U.S.C. § 2255. Section 2253(c) instructs that the court may issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right," and the court "indicates which specific issue or issues satisfy [that] showing." A defendant can satisfy that standard by demonstrating that the issues raised are debatable among jurists, that a court could resolve the issues differently, or that the questions deserve further proceedings. Slack v. McDaniel, 529 U.S. 473 (2000) (citing Barefoot v. Estelle, 463 U.S. 880, 893 (1983)). After considering the record in this case, the Court concludes that a COA should not issue because defendant has not made a substantial showing of the denial of a constitutional right. The Court does not find that the issues raised by defendant are debatable among jurists or that the Tenth Circuit would resolve the issues differently, and defendant has not made a substantial showing of the denial of a constitutional right.

**IT IS THEREFORE ORDERED** that defendant's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (Dkt. # 44) is **denied**. A separate judgment is entered herewith.

**IT IS FURTHER ORDERED** that the Court declines to issue a certificate of appealability on any issue raised in defendant's § 2255 motion.

**DATED** this 10th day of February, 2023.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE